## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., <br><br>                Plaintiff, <br>    v. <br><br> U.S. DEPARTMENT OF JUSTICE including its components OFFICE OF COMMUNITY ORIENTED POLICING SERVICES and OFFICE OF INFORMATION POLICY, <br><br>               Defendant. | Civil Action No. 18-cv-4354 <br><br> **COMPLAINT** |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 *et seq.*

### INTRODUCTION

1.     The NAACP Legal Defense and Educational Fund, Inc. ("Plaintiff" or "LDF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to obtain injunctive, declaratory, and other appropriate relief requiring the U.S. Department of Justice ("Defendant" or "DOJ"), and/or its components, the Office of Community Oriented Policing Services ("COPS Office") and the Office of Information Policy ("OIP"), to release agency records requested by LDF.

2.     The records requested by LDF relate to grant awards and technical assistance provided to the North Charleston Police Department ("NCPD") in North Charleston, South Carolina through the COPS Office's Collaborative Reform Initiative for Technical Assistance ("Collaborative Reform Initiative"), a program authorized pursuant to 34 U.S.C. § 10381.

1

3.      The grant awards and technical assistance at issue in this action pertain to a request made by North Charleston's Mayor and Police Chief in April 2016 to the COPS Office to conduct a comprehensive and independent assessment of NCPD's policing practices.  This request was made after North Charleston residents demanded police reforms in the aftermath of the April 4, 2015, NCPD police killing of Walter Scott, an unarmed Black man.

4.      In May 2016, the COPS Office announced that it would conduct a comprehensive, independent assessment of NCPD to provide technical assistance as part of the Collaborative Reform Initiative.

5.      North Charleston residents cooperated with this comprehensive, independent assessment by meeting individually with COPS Office representatives and hosting community meetings to share concerns and recommend policing reforms.  They have been waiting two years for the outcome of that assessment.

6.      In August 2017, LDF requested documents concerning the COPS Office's comprehensive and independent assessment of NCPD pursuant to FOIA to help North Charleston residents understand and address possible racially-biased policing practices and other unlawful conduct by NCPD.  Such information is critical to the ability of North Charleston's residents to usher long-term reform within NCPD.  LDF brings this action because, under FOIA, DOJ unlawfully withheld the requested documents and failed to make reasonable efforts to search for all relevant documents, and further waived its right to object to LDF's administrative appeal by not adequately responding within the requisite time period.

## JURISDICTION AND VENUE

7.      This court has jurisdiction over this action and over the parties pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 701-706.  This Court has jurisdiction to

grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8.      LDF is a nonprofit 501(c)(3) corporation established under the laws of the State of New York. Founded in 1940 under the leadership of Thurgood Marshall, LDF focuses on advancing civil rights in education, economic justice, political participation, and criminal justice. In furtherance of its mission, LDF utilizes litigation to address racially discriminatory policing practices and policies, *see, e.g.*, *Davis v. City of New York*, No. 10 Civ. 0699 (S.D.N.Y.), and supports demands from local communities—including North Charleston, South Carolina—for federal civil rights investigations of police departments to address long-standing racially-discriminatory police practices.

9.      Defendant Department of Justice ("DOJ") is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The COPS Office is a component of DOJ and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The OIP is a component of DOJ and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL BACKGROUND

### *The Killing of Walter Scott by an NCPD Officer*

10.      On April 4, 2015, then-NPCD officer Michael Slager, who is white, fatally shot 50-year-old Walter Scott, an unarmed Black man, in the back as he ran away during a routine traffic stop.

11.      State and federal officials responded by bringing criminal charges against Officer Slager, who was immediately fired from NCPD.  The state case resulted in a mistrial in December

2016.  In March 2017, Mr. Slager pled guilty to federal charges, and in December 2017, a federal judge sentenced him to 20 years of imprisonment.

*North Charleston Residents' Request for a Federal Civil Rights Investigation of NCPD*

12.     Due to serious concerns that Mr. Scott's police-involved death was an example of systemic, racial bias in NCPD's policing practices, LDF and over two dozen North Charleston leaders submitted a letter to then-U.S. Attorney General Loretta Lynch in July 2015, requesting that DOJ open a civil rights investigation of NCPD ("July 2015 Letter").  (A true and correct copy of the July 2015 Letter is attached hereto as Exhibit 1.)

13.     In the July 2015 Letter, LDF documented numerous incidents of alleged misconduct by NCPD officers dating back to 2000, including excessive use of force, unconstitutional stops and arrests, and racial disparities in policing practices.

14.     In the aftermath of Walter Scott's death and in response to mounting public pressure from residents, North Charleston Mayor Keith Summey and then-Police Chief Eddie Driggers sent a letter to the COPS Office in April 2016, requesting technical assistance to build police-community trust, improve police-community relations, and train NCPD in fair and impartial policing practices ("April 2016 Letter").  (A true and correct copy of the April 2016 Letter is attached hereto as Exhibit 2.)  In the April 2016 Letter, Mayor Summey also requested more generalized assistance for "the maximum amount of assistance that the COPS program could provide."

*Memorandum of Agreement Between the COPS Office and North Charleston*

15.     The COPS Office granted the request in the April 2016 Letter, and entered into a Memorandum of Agreement with North Charleston elected officials on September 20, 2016, to

4

provide services through its Collaborative Reform Initiative. (A true and correct copy of the Memorandum of Agreement is attached hereto as Exhibit 3.)

16. The expected work product of the voluntary process under the Memorandum of Agreement was a series of findings and recommendations in the form of publicly-released written reports based on information assembled from "subject matter experts, interviews, analysis of departmental data, surveys, community forums, and direct observation."

17. Although this process was collaborative with the NCPD, it was also "an objective and independent means to institute long-term reform in a way that is transparent to all community stakeholders."

18. The COPS Office began its independent and comprehensive assessment of NCPD in or around September 2016. As the COPS Office conducted this assessment, LDF, North Charleston residents, and civic organizations communicated periodically with representatives of the COPS Office to provide information about the NCPD's policing practices and to stay apprised of the COPS Office's progress; this ongoing dialogue included communications with representatives of the Police Foundation, which served as a consultant to the COPS Office.

_COPS Office's Failure to Respond to Community Inquiries About the Assessment_

19. After no communication with the COPS Office for approximately four months, LDF and North Charleston community leaders sent a letter to the COPS Office in July 2017 requesting the status of the comprehensive and independent assessment of the NCPD ("July 2017 Letter"). (A true and correct copy of the July 2017 Letter is attached hereto as Exhibit 4.) The COPS Office did not respond to this letter.

20.     On August 9, 2017, North Charleston Mayor Summey also requested the status of the assessment in a letter to the COPS Office.  (A true and correct copy of the letter from Mayor Summey to the COPS Office, dated August 9, 2017, is attached hereto as Exhibit 5.)

### THE FREEDOM OF INFORMATION ACT

21.     Under the Freedom of the Information Act, all federal agency records are accessible to the public, unless the government shows that they are specifically exempt. 5 U.S.C. § 552, *et seq*. The Supreme Court has explained that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ("Disclosure, not secrecy, is the dominant objective of the Act."). Thus, the Supreme Court has recognized a presumption in favor of disclosure, with the burden falling on the government agency to justify any nondisclosure. *See, e.g., U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) ("If an agency improperly withholds any documents, the district court has jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action. . . .") (internal quotation marks omitted).

22.     The Freedom of Information Act imposes certain time limits on government agencies to ensure that FOIA requests are not neglected. An agency is required to determine whether it will comply with a FOIA request within 20 working days of receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). Likewise, an agency is required to make a determination on an appeal within 20 working days of receiving the appeal. *Id*. § 552(a)(6)(A)(ii). Agencies are prohibited from tolling the 20-day response period for FOIA requests except through (1) a single query to the

requester regarding the substance of the request; or (2) communications with the requester regarding fee assessment. § 552(a)(6)(A). While an agency may extend the 20-day period due to "unusual circumstances," this extension is limited to an additional ten working days. *Id*. § 552(a)(6)(B).

## FOIA REQUEST AND AGENCY RESPONSES

23. On August 24, 2017, LDF submitted a FOIA request ("FOIA Request") to the COPS Office seeking five categories of documents relating to the collaborative reform assessment of NCPD.  (A true and correct copy of the FOIA Request is attached hereto as Exhibit 6.)  These five categories include:  (1) documents concerning NCPD; (2) documents transmitted between the COPS Office and Police Foundation and other consultants regarding the Collaborative Reform Initiative with NCPD; (3) documents transmitted between the COPS Office and NCPD regarding the Collaborative Reform Initiative; (4) documents transmitted between the COPS Office and the Office of the Mayor of North Charleston, South Carolina regarding the Collaborative Reform Initiative; and (5) documents transmitted between the COPS Office and any members of the North Charleston City Council regarding the Collaborative Reform Initiative.

24. The Office acknowledged receipt of the FOIA Request by letter, dated August 28, 2017.  The letter designated LDF's FOIA Request number as 2017-FOI-073.

25. While the FOIA Request was pending, U.S. Attorney General Jefferson B. Sessions III announced on September 15, 2017, that the COPS Office would no longer conduct comprehensive assessments of law enforcement agencies and effectively ended the Collaborative Reform Initiative. He did not state whether the COPS Office would complete pending, long-awaited assessments.

26.     On September 22, 2017, the COPS Office provided an interim response to the FOIA Request ("Interim Response") by releasing 58 documents responsive to Category 1 concerning information about grants from the COPS Office to NCPD.  (A true and correct copy of the Interim Response is attached hereto as Exhibit 7.)

27.     On October 11, 2017, the COPS Office sent a final response to the FOIA Request ("Final Response"), releasing three additional pages and stating that the COPS Office is withholding in their entirety 331 pages of documents responsive to Categories 2 and 3 pursuant to Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5).   (A true and correct copy of the Final Response is attached hereto as Exhibit 8.)  Exemption 5 prohibits disclosure of certain inter-agency and intra-agency communications protected by the deliberative process privilege.  The Final Response further stated that the withheld documents were inappropriate for discretionary disclosure.

28.     However, Exemption 5 does not apply to the entirety of responsive documents in Categories 2 and 3. In fact, Category 3 concerns documents received by the COPS Office (or its consultant) from the NCPD.  The NCPD is not a federal agency.  Accordingly, the documents NCPD sent to the COPS Office are not inter-agency or intra-agency records, and Exemption 5 is inapplicable. Further, at least some of the responsive documents in both Categories 2 and 3 are not deliberative because they are purely factual in nature (e.g., data and statistical information, and patterns and trends in citizen complaints against NCPD personnel). For these documents as well, Exemption 5 does not apply.

29.      Finally, even if some responsive records in Categories 2 and 3 are deliberative in nature, there is no reasonably foreseeable harm that would result from disclosure of documents, a requirement for an agency to withhold documents under Exemption 5. Since the COPS Office has ended the program to which the FOIA Request pertains, there is no risk of harm posed to future

deliberations. Accordingly, even if some of the documents are deliberative in nature, the COPS Office is required to disclose them.

30.     In the Final Response, the COPS Office also asserted that it does not have documents responsive to Categories 4 and 5 of the FOIA Request and advised that LDF could appeal the Final Response within 90 days.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31.     On January 9, 2018, LDF filed a timely administrative appeal with OIP ("FOIA Appeal"), challenging the COPS Office's (1) assertion of an exemption under 5 U.S.C. § 552(b)(5) with respect to responsive documents in Categories 2 and 3 and (2) its failure to adequately search for documents in Categories 4 and 5.  (A true and correct copy of the FOIA Appeal is attached hereto as Exhibit 9.)  The FOIA Appeal noted, *inter alia*, that LDF was aware of at least one document in Category 4 that the COPS Office failed to disclose.

32.     On January 9, 2018, OIP acknowledged receipt of the appeal.  (A true and correct copy of OIP's acknowledgment on January 9, 2018, is attached hereto as Exhibit 10.)

33.     As of the filing date of this Complaint, more than 20 days (excepting Saturdays, Sundays, and legal public holidays) have elapsed since LDF submitted the FOIA Appeal.  As of the filing date of this Complaint, OIP has not (besides acknowledging receipt) provided any response to the FOIA Appeal.

34.     Pursuant to 5 U.S.C. § 552 (a)(6)(A)(ii), Defendant has failed to comply with the requisite time limits and, thus, LDF has constructively exhausted all administrative remedies.

## CLAIMS FOR RELIEF

### Count I:  Violation of FOIA for Failure to Make Records Available

35.     Plaintiff incorporates paragraphs 1 to 34 as if fully set forth herein.

36.     FOIA grants Plaintiff a statutory right to the requested records, 5 U.S.C. §552(a)(3)(A), and DOJ has no legal basis for withholding all documents that are responsive to categories two and three in LDF's FOIA request.

37.     FOIA also requires DOJ to "take reasonable steps necessary to segregate and release nonexempt information," 5 U.S.C. § 552(a)(8)(A), and DOJ has failed to meet this requirement.

38.     Defendant's failure to promptly make available the records sought by the Request for which no valid exemption applies violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

39.     On information and belief, Defendant currently has possession, custody, or control of documents responsive to the FOIA Request to which no valid exemption applies.

**Count II:  Violation of FOIA for Failure to Make Reasonable Efforts to Search**

40.     Plaintiff incorporates paragraphs 1 to 34 as if fully set forth herein.

41.     FOIA requires DOJ to make a reasonable effort to search for records responsive to the FOIA Request.   5 U.S.C. § 552(a)(3)(C)

42.     Despite this requirement, Defendant failed to make reasonable efforts to search for all documents responsive to the FOIA Request.

43.     On information and belief, Defendant currently has possession, custody, or control of documents responsive to the FOIA Request that Defendant incorrectly purports not to have in its possession, custody, or control.

**Count III:  Violation of FOIA For Failure to Timely Respond to Appeal**

44.     Plaintiff incorporates paragraphs 1 to 34 as if fully set forth herein.

45.     Plaintiff timely appealed Defendant's response to the FOIA Request.

46.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), Defendant must respond to this appeal within 20 days of the filing of the appeal.

47.     Defendant did not sufficiently respond to Plaintiff's appeal within the requisite 20 days under 5 U.S.C. § 552(a)(6)(A)(ii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare that the requested records are not exempt from disclosure under 5 U.S.C. § 552(b)(5);

2.     Declare that Defendant violated FOIA by unlawfully withholding the requested records;

3.     Declare that Defendant has waived any objections to the FOIA Appeal for failure to adequately respond within the requisite 20-day time period;

4.     Order Defendant to conduct an adequate search for agency records responsive to the FOIA Request within 10 days of the Court's Order in this matter;

5.     Order Defendant to immediately process and release all records responsive to the FOIA Request and not exempt pursuant to FOIA within 10 days of the Court's Order in this matter;

6.     Award costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

7.     Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 16th day of May 2018.

*/s/ Samuel Spital*

Sherrilyn A. Ifill
Bar No. SI8699
  *President and Director-Counsel*
Samuel Spital
Bar No. SS4839
  *Counsel of Record*
Jin Hee Lee
Bar No. JL4912
Kristen A. Johnson*
NAACP Legal Defense and
  Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
sifill@naacpldf.org
sspital@naacpldf.org
jlee@naacpldf.org
kjohnson@naacpldf.org

*\*Bar Admission pending*